IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| INCEPTION MINING, INC., a Nevada company,<br><br>    Plaintiff,<br><br>v.<br><br>MOTHER LODE MINING, INC., a Canadian company, and ROBERT SALNA, an individual,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT MOTHER LODE MINING'S MOTION TO DISMISS AND GRANTING DEFENDANT SALNA'S MOTION TO DISMISS<br><br>Case No. 2:24-cv-00171-TS-CMR<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Cecilia M. Romero |

This matter is before the Court on Defendant Mother Lode Mining, Inc.'s ("MLM") and Defendant Robert Salna's ("Salna") respective Motions to Dismiss under Rule 12(b)(6).[1] For the reasons discussed below, the Court will deny MLM's Motion and grant Mr. Salna's Motion.

I.  BACKGROUND[2]

Inception Mining, Inc. ("Plaintiff" or "IMII") is a mining exploration company that owned and operated the Clavo Rico gold mine (the "Mine") through its wholly owned subsidiary, Compañía Minera Cerros Del Sur, S.A. de C.V. ("CMCS").[3] Plaintiff began discussions with MLM and Mr. Salna, MLM's sole owner, regarding the sale of CMCS, and by extension, the Mine.[4]

---

[1] Docket Nos. 31, 30.

[2] The relevant facts in the Amended Complaint (Docket No. 27) are taken as true for purposes of this Motion.

[3] Docket No. 27 ¶¶ 9–12.

[4] *Id.* ¶ 15.

In January 2023, Plaintiff and Defendants began negotiating the specific terms for the sale of CMCS through a Letter of Intent ("LOI").[5] During negotiations and prior to executing the LOI, Defendants requested, and Plaintiff agreed, to make the LOI binding upon the satisfaction of two conditions precedent: Plaintiff executing a settlement with an unrelated third party, and MLM paying $3,000,000.[6] On January 23, 2023, the two conditions were satisfied.[7] Plaintiff then transferred all of its shares in CMCS to MLM[8] and MLM became obligated to pay Plaintiff $2,700,000 in monthly installments for a period of two years according to a schedule agreed upon by the parties (the "Remainder Payments").[9] Pursuant to the terms of the LOI, any outstanding balances or missed payments are secured by a 10% Net Smelting Return ("NSR") on the Mine's production until the Remainder Payments are delivered in full and the Purchase Price is paid in full.[10] Plaintiff alleges that Defendants breached the agreement by failing to make the scheduled payments since October 20, 2023, causing Plaintiff to incur substantial damages.[11]

In its Complaint, Plaintiff brings two causes of action against both MLM and Mr. Salna in his individual capacity: breach of contract (Count I), and in the alternative, unjust enrichment (Count II).[12] Plaintiff also seeks to hold Mr. Salna jointly and severally liable with MLM through

---

[5] *Id.* ¶ 18.
[6] *Id.* ¶ 24.
[7] *Id.* ¶ 26.
[8] *Id.* ¶ 37.
[9] *Id.* ¶¶ 29, 34.
[10] *Id.* ¶ 35.
[11] *Id.* ¶¶ 47–48.
[12] *Id.* ¶¶ 49–58, 59–67.

a theory of alter-ego.[13] Defendants each move to dismiss Counts I and II against them; additionally, Mr. Salna seeks dismissal of the theory of alter-ego liability.

## II.  LEGAL STANDARD

When evaluating a complaint under Rule 12(b)(6),[14] the court accepts all well-pleaded factual allegations, as distinguished from conclusory allegations, as true and views them in the light most favorable to the non-moving party.[15] Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face,"[16] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[17] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[18] Accordingly, "a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."[19]

In considering a motion to dismiss, a district court considers the complaint, any attached exhibits,[20] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[21] The court may also consider other documents "referred to in

---

[13] *Id.* ¶ 5.

[14] Fed. R. Civ. P. 12(b)(6).

[15] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[16] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[18] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[19] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

[20] *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[21] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[22]

### III.  DISCUSSION

To establish a breach of contract under Utah law, a plaintiff must show: "(1) a contract between the parties, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[23]

To establish unjust enrichment, a plaintiff must show: "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[24]

The LOI is incorporated into the Complaint by reference, is central to the Complaint,[25] and neither party disputes its authenticity. Accordingly, the Court may consider it for purposes of ruling on these Motions.

   a. *Defendant Mother Lode Mining, Inc.'s Motion to Dismiss*

In its Motion, MLM argues the Complaint fails to allege facts supporting a breach of the LOI because it is "an unintegrated, incomplete contract, [and] is ambiguous as to whether the Remainder Payments are due if there is no royalty or no production."[26] MLM asserts that "[i]n

---

[22] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[23] *Johnson v. USANA Health Scis., Inc.*, 632 F. Supp. 3d 1245, 1256–57 (D. Utah 2022) (internal quotation marks omitted) (citing *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224).

[24] *Howard v. Manes*, 2013 UT App 208, ¶ 30, 309 P.3d 279, 289 (internal quotation marks and citation omitted).

[25] Docket No. 27 ¶¶ 27–28.

[26] Docket No. 31, at 7.

4

this case the NSR is less than the amount of the Remainder Payments . . . [and a]s a result, there is no NSR to pay and the Remainder Payments are not due, [and thus MLM] cannot be in breach of the LOI."[27] To support this argument, MLM attached an affidavit of Mr. Salna stating that was his interpretation and understanding of the LOI.[28]

Under Utah law, "[w]hen interpreting a contract, a court first looks to the contract's four corners to determine the parties' intentions, which are controlling."[29] "If the language at issue is ambiguous, then the district court should not grant a motion to dismiss . . . [because] the intent of the parties becomes a question of fact upon which parol evidence of the parties' intentions should be admitted."[30] Therefore, even if the Court accepted MLM's argument that the LOI is unintegrated and ambiguous as to whether the Remainder Payments are due if there is no NSR, this would only create a question of fact that is inappropriate to be resolved on a motion to dismiss. That is, as argued by Plaintiff, even if the LOI is ambiguous, such ambiguity "should be decided upon a later date and not at the motion to dismiss stage."[31]

In support of its breach of contract claim, Plaintiff sufficiently pleads that (1) the LOI is a binding contract; (2) Plaintiff performed its obligations under the LOI when it transferred 100% of its shares in CMCS to MLM; (3) MLM breached the agreement because the plain reading of the LOI "obligates Defendants to pay monthly payments, not dependent on NSR,"[32] and MLM

---

[27] *Id.* at 8.

[28] Docket No. 31-2. The court cannot consider this affidavit at the motion to dismiss stage. It is simply noted. *See Velasquez v. Salt Lake Cnty.*, No. 2:05-CV-689 TS, 2005 WL 3371083, at *1 (D. Utah Dec. 12, 2005).

[29] *Pearce v. Purple Innovation, Inc.*, 2025 UT App 45, ¶ 22, 568 P.3d 649, 654 (internal quotation marks and citation omitted).

[30] *Id.* ¶ 24 (internal quotation marks and citation omitted).

[31] Docket No. 33, at 7.

[32] *Id.*

has not made any Remainder Payments since October 2023[33]; and (4) as a result, Plaintiff has suffered damages. Accordingly, the Court finds that Plaintiff has plausibly stated a claim for breach of contract against Defendant MLM and will deny MLM's Motion on Count I.

MLM also argues that, because all other payments due under the LOI have been paid, Plaintiff's unjust enrichment claim also fails. For substantially the same reasons, the Court rejects this argument. Plaintiff's complaint sufficiently pleads that (1) Plaintiff conferred a benefit on MLM by transferring its shares in CMCS; (2) MLM was aware of this benefit and agreed to it through the LOI; and (3) MLM retained the shares but did not pay the agreed upon price for the shares making retention of such inequitable. Accordingly, the Court finds that Plaintiff has plausibly stated a claim for unjust enrichment against Defendant MLM and will deny MLM's Motion as to Count II.

b. *Defendant Mr. Salna's Motion to Dismiss*

In its Complaint, Plaintiff alleges breach of contract and unjust enrichment against Mr. Salna in his individual capacity. Plaintiff makes two bare assertions to support its claims against Mr. Salna personally: that "IMII and Defendants entered into a valid and enforceable contract"[34]; and that "IMII conferred a benefit on Defendants. . . ."[35]

Mr. Salna first argues these assertions are insufficient to support a claim for breach of contract. He argues that Plaintiff "has failed to plead any facts which show Mr. Salna had any contractual relationship with Plaintiff."[36] Defendant points out that "[t]he Complaint only

---

[33] Docket No. 27 ¶ 47; Docket No. 31, at 5.

[34] Docket No. 27 ¶ 50.

[35] *Id.* ¶ 60.

[36] Docket No. 30, at 5 (emphasis omitted).

discusses Mr. Salna within the context of his ownership of MLM, never in his individual capacity."[37]

The Court agrees with Mr. Salna that Plaintiff has failed to offer more than a mere formulaic recitation that Mr. Salna contracted with Plaintiff personally. Even in its Complaint, Plaintiff alleges that "Salna executed the LOI *for and on behalf of MLM*[,]"[38] which indicates that Mr. Salna acted to bind MLM in his capacity as an authorized agent, and not in his individual capacity.[39] Further, the Complaint alleges that it was "MLM [that] agreed to purchase" the shares in CMCS,[40] that it was "MLM [that] . . . failed to make any payments,"[41] and that it was due to "MLM's failure to make payments[,]" that Plaintiff suffered damages.[42]

Additionally, the plain wording of the LOI, even when viewed in a light most favorable to the Plaintiff, does not support a claim for breach of contract against Mr. Salna personally. For example, the LOI states that it is "intended to express the general terms of the Share Purchase Agreement to be formalized between Inception Mining, Inc., . . . and Mother Lode Mining Inc., a corporation."[43] In sum, Plaintiff has not alleged facts supporting that Mr. Salna was a party to the contract. Accordingly, the Court will grant Mr. Salna's Motion as to Count I.

Mr. Salna next argues that Plaintiff has similarly failed to plead sufficient facts to support a claim for unjust enrichment. For substantially the same reasons discussed above, the Court agrees. The Complaint fails to allege specific facts supporting that Plaintiff conferred a benefit

---

[37] *Id.*

[38] Docket No. 27 ¶ 25 (emphasis added).

[39] *See* RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006).

[40] Docket No. 27 ¶ 28.

[41] *Id.* ¶ 47.

[42] *Id.* ¶ 48.

[43] Docket No. 31-1, at 1.

on Mr. Salna in his individual capacity through the transfer of the CMCS shares, or that Mr. Salna individually retained a benefit from the transfer of such shares, separately from MLM. Accordingly, the Court will grant Mr. Salna's Motion on Count II.

Lastly, Mr. Salna argues that Plaintiff has failed to allege sufficient facts to support alter ego liability. Plaintiff alleges that "MLM is the alter ego of Robert Salna . . . [and] should be held jointly and severally liable for any judgment against MLM."[44] Under Utah law, alter ego is not a separate claim for relief but rather a theory of liability.[45] "Ordinarily a corporation is regarded as a legal entity, separate and apart from its stockholders."[46] "If a party can prove its alter ego theory, then that party may 'pierce the corporate veil' and obtain a judgment against the individual shareholders even when the original cause of action arose from a dispute with the corporate entity."[47] However, "courts must balance piercing and insulating policies and will only reluctantly and cautiously pierce the corporate veil."[48] Additionally, "courts have been extraordinarily reluctant to lift the veil in contract cases, . . . where the creditor has willingly transacted business with the corporation."[49] Ultimately, "the decision to pierce the corporate veil is a highly factual determination, and each case should be determined on its particular facts."[50]

The Utah Supreme Court has adopted a two-prong test to determine when a party may pierce the corporate veil: "(1) there must be such unity of interest and ownership that the separate

---

[44] Docket No 27 ¶ 5.

[45] *See Bushnell v. Barker*, 2012 UT 20, ¶ 13, 274 P.3d 968.

[46] *Dockstader v. Walker,* 510 P.2d 526, 528 (Utah 1973).

[47] *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 13, 284 P.3d 630.

[48] *Id*. ¶ 15 (quoting *Salt Lake City Corp. v. James Constructors, Inc.*, 761 P.2d 42, 46 (Utah Ct. App. 1988).

[49] *d'Elia v. Rice Dev., Inc.*, 2006 UT App 416, ¶ 28, 147 P.3d 515 (internal quotation marks and citation omitted).

[50] *Jones & Trevor Mktg., Inc.*, 2012 UT 39, ¶ 15.

personalities of the corporation and the individual no longer exist, viz., the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow."[51] "[T]he party alleging alter ego liability must present evidence . . . with respect to *both* elements of the *Norman* alter ego test."[52] To aid these determinations, the Utah Supreme Court also adopted the following eight non-exclusive factors that are to be "treated as guidelines and not as a conclusive test"[53]:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence of corporate records; (7) the use of the corporation as a facade for operations of the dominant stockholder or stockholders; and (8) the use of the corporate entity in promoting injustice or fraud.[54]

In its Complaint, regarding the first prong, Plaintiff alleges that "MLM is the alter ego of Robert Salna, executing substantially similar operations and activities"[55] and that during the transaction "[m]onies were paid directly by Salna," and vice versa "monies went directly to Salna as well."[56] Plaintiff also asserts that "[o]n information and belief, MLM and Salna commingled funds without separating the relevant entities."[57] Additionally, in its Response, Plaintiff argues that "it is known that Mr. Salna is the sole owner and manager of MLM and there

---

[51] *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979) (citation omitted) (referred to as the *Norman* alter ego test).

[52] *Jones & Trevor Mktg., Inc.*, 2012 UT 39, ¶ 25 (emphasis added).

[53] *Id.* ¶ 18 (citation omitted) (referred to as the *Colman* factors).

[54] *Id.* ¶ 16; see also *id.* ¶ 20 (clarifying that "the first seven *Colman* factors are relevant to the formalities element of the *Norman* test, while the eighth factor merely reiterates the fairness element of the *Norman* test").

[55] Docket No. 27 ¶ 5.

[56] *Id.*

[57] *Id.*

9

is a unity of interest and ownership between [them]."[58] The factual allegations contained in Plaintiff's Complaint pertain to two *Colman* factors: that corporate formalities were ignored, and that the corporation was used as a façade for the personal business operations of Mr. Salna. The Court finds that Plaintiff has plausibly pled unity of ownership and interest sufficient for the first prong of the *Norman* test.[59]

However, the Complaint fails to plead any factual allegations regarding the second prong. Only in Plaintiff's Response does Plaintiff allege that "[u]pon information . . . Mr. Salna is using the corporate form of MLM to promote injustice and fraud . . . and the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow."[60] Beyond this however, Plaintiff does not provide any factual allegations or detail as to what the fraud, injustice, or inequity would be, but states that it "can add further information and allegations to their Amended Complaint if it is deemed necessary to defeat Defendants' Motion to Dismiss."[61]

The Court finds that the Complaint fails to allege facts regarding the second prong sufficient to support alter-ego liability. However, even considering the additional allegations in Plaintiff's Response would likewise be insufficient. Based on those facts alleged, drawing reasonable inferences in favor of Plaintiff and resolving doubts against Defendant, it is difficult to infer what fraud, injustice, or inequity would result from the observance of the corporate form.

---

[58] Docket No. 32, at 3.

[59] *Jones & Trevor Mktg., Inc.*, 2012 UT 39, ¶¶ 22–23 (noting that "the *Colman* factors . . . are not required elements. . . .[and] evidence of even one of the *Colman* factors may be sufficient to . . . preclude summary judgment").

[60] Docket No. 32, at 3.

[61] *Id.* at 3–4.

In *Tetra Corporate Services, LLC v. Capitalplus Equity, LLC*,[62] the court denied a motion to dismiss for lack of personal jurisdiction after finding plaintiff sufficiently pled alter-ego liability. There, the plaintiff alleged that the defendant stopped making its payment obligations, and at the same time, created two subsidiaries, both of which announced projects and suggested they had extensive funding to do so. The court held that "[t]aken together, these allegations plausibly imply that [the defendant] transferred assets to two newly formed and two currently existing business entities owned by overlapping parties as a means to avoid . . . payment obligations."[63]

Here, unlike *Tetra Corporate Services*, although Defendant MLM has stopped making payments, Plaintiff has not alleged that MLM is intentionally depriving itself of its ability to satisfy its payment obligations or that MLM is undercapitalized and would be unable to satisfy a judgment rendered against it. This issue is addressed by Mr. Salna who says that "MLM is not undercapitalize[d], is not insolvent, and has the assets that were sold to it by the Plaintiff . . . [and such assets are] presumably. . . .worth the value of the sales price."[64]

Courts routinely dismiss theories of alter ego liability where a plaintiff fails to allege or offer sufficient evidence of fraud, injustice, or inequity, although such cases commonly occur beyond the motion to dismiss stage.[65] On the other hand, some courts have held that because

---

[62] No. 2:24-CV-00399-TC-CMR, 2025 WL 2814763 (D. Utah Sept. 30, 2025).

[63] *Id*. at *6.

[64] Docket No. 30, at 8.

[65] *Messick v. PHD Trucking Serv., Inc.*, 678 P.2d 791, 794–95 (Utah 1984) (reversing trial court's ruling that allowed plaintiff to pierce the veil because "[n]o evidence was . . . received to the effect that observance of the corporate entity would 'sanction a fraud, promote injustice, or produce an inequitable result'"); *Dockstader*, 510 P.2d at 372–73 (finding no alter ego because "the plaintiff neither alleged nor proved any fraud or wrongdoing on the part of [defendant]"); *McCulloch Gas Transmission Co. v. Kansas-Nebraska Nat. Gas Co.*, 768 F.2d 1199, 1200–01 (10th Cir. 1985) (rejecting the argument that "a finding of fundamental unfairness or injustice

"[a]lter ego is a highly fact intensive issue[, it is] inappropriate to resolve at the motion to dismiss stage. . . .[and that such] issues can be resolved through discovery."[66]

In balancing these considerations, the Court will grant Mr. Salna's Motion on the alter-ego liability theory; but will also grant Plaintiff permission to seek leave to file a second-amended complaint with supporting factual allegations addressing why fraud, injustice, or inequity would result by observing the corporate form.[67] If Plaintiff wishes to file a motion to amend the Complaint, it must do so within 14 days of this Order.

### IV. CONCLUSION

It is therefore

ORDERED that MLM's Motion to Dismiss (Docket No. 31) is DENIED.

It is further

ORDERED that Mr. Salna's Motion to Dismiss (Docket No. 30) is GRANTED without prejudice.

---

[may be] implied" where alter ego is established; rather and in addition, plaintiff must also show that "disregard[ing] the separate identities . . . will prevent fraud, injustice, or wrong") (internal quotation marks and citation omitted); *Medina v. Four Winds Int'l Corp.*, 111 F. Supp. 2d 1164, 1169 (D. Wyo. 2000) (finding that "[defendant had] adequate insurance coverage and assets to cover any judgment likely to be rendered against it . . . [and p]laintiffs present[ed] no allegations or evidence that injustice or unfairness would result unless corporate separateness is disregarded"); *Norman v. Del Elia*, 533 P.2d 537, 539 (Ariz. 1975) (holding that the issue of alter ego was properly not submitted to the jury on the grounds that there was "no evidence of fraud or injustice . . .").

[66] *Berrios-Bones v. Nexidis, LLC*, No. 2:07CV193DAK, 2007 WL 3231549, at *9 (D. Utah Oct. 30, 2007); *El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*, 773 F. Supp. 3d 1236, 1247–48 (D. Colo. 2025).

[67] *Equal Emp. Opportunity Comm'n v. 'Murica, LLC*, 694 F. Supp. 3d 1356, 1370 (D. Colo. 2023) (granting motion to dismiss on the grounds that plaintiff "fail[ed] to adequately plead allegations sufficient to sustain a remedy or claim for piercing the corporate veil[,]" but permitting plaintiff to "seek leave to amend to add an alter ego theory. . . .[if it] find[s] evidence in discovery supporting a veil piercing theory").

Dated this 17th day of November, 2025.

BY THE COURT:

Ted Stewart
United States District Judge